IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIZABETH HARRIS             ) | |
|                              ) | |
|     Petitioner,              ) | |
|                              ) | |
| vs.                          ) | Case No.: **3:12-cv-01207-DRH-PMF** |
|                              ) | |
| UNITED STATES OF AMERICA,    ) | |
|                              ) | |
|     Respondent.              ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is petitioner Elizabeth Harris' amended petition for a writ of habeas corpus (Doc. 6) filed pursuant to 28 U.S.C. § 2241. Williams is presently incarcerated at the Federal Prison Camp at Greenville Federal Correctional Institution ("Greenville-FCI"), a correctional facility under the control of the U.S. Bureau of Prisons ("BOP"). Respondent James N. Cross, Greenville-FCI Warden, has filed a response (Doc. 13) to the petition, and Williams has filed a reply (Doc. 15). For the following reasons, it is recommended that the petition (Doc. 1) be denied and this habeas litigation be dismissed.

Harris is serving a 10-year, 10-month term of imprisonment for conspiracy to distribute and possession with intent to distribute methamphetamine. *See* Doc. 13-1 at 2 ¶1. Her projected release date is June 17, 2004. *Id*. However, she is presently scheduled to serve the final approximately 7 months of her sentence, beginning November 20, 2013, in a residential reentry center ("RRC"). *See id*. ¶¶1-2. Under Title 18, United States Code, Section 3624, Subsection (c), ("the Second Chance Act") the BOP is mandated "to the extent practicable" to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to

exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c).

Harris was notified of Greenville-FCI's official determination regarding her length of RRC placement on October 2, 2012. *See* Doc. 13-1 at 1 ¶2. Originally, that determination was that Harris would begin her RRC placement on December 17, 2013. *Id*. It appears that Harris then submitted two "cop-outs" (i.e. grievances) seeking the statutory maximum 12-month RRC placement to prison officials at Greenville-FCI. *See* Doc. 6-1 at 2-4. The two grievances were submitted on October 22, 2013 and January 2, 2013. *See id*.

Harris filed the instant writ of habeas corpus seeking additional RRC placement on November 1, 2012. *See* Doc. 1. This case was transferred to this district on November 26, 2012. *See* Doc. 2. On December 19, 2012, Harris was ordered to file an amended petition. *See* Doc. 6. She filed the amended petition on January 23, 2013. *See* Doc. 6. While all the activity with this case was occurring, it appears that Greenville-FCI was conducting further analysis of Harris' length of RRC placement. *See* Doc. 13-1 at 1 ¶2. On March 27, 2013, Harris was notified that she would receive approximately an additional month of RRC placement, beginning on November 20, 2013. *See id*.

Harris filed her reply brief in this case on April 11, 2013, wherein she again indicates that she would like the Court to order the BOP to implement the maximum 12-month RRC placement under the Second Chance Act. *See* Doc. 15. She argues that more than 7 months RRC placement is appropriate in her case "in order to provide sufficient duration in an RRC to provide the petitioner the greatest likelihood of successful reintegration into the community." *See id*. at 5. Harris admits that she did not pursue BOP administrative remedies. *See id*. She claims that such a pursuit would be futile because it was clear that her claim would be rejected at the

administrative level. *See id*. Respondent disagrees and states that the failure to exhaust administrative remedies compels dismissal of the instant petition. *See* Doc. 13 at 5.

The petition should be dismissed because Harris failed to exhaust her available administrative remedies. "A prisoner bringing a 28 U.S.C. § 2241 habeas corpus petition challenging the execution of his sentence must exhaust his administrative remedies before the District Court can consider the merits the petition." *Stokes v. Hollingsworth*, 2011 WL 6977331, 2 (S.D.Ill., December 19, 2011), *Report and Recommendation Adopted by* 2012 WL 78403 (S.D.Ill. Jan 10, 2012), (citing *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004)). "The common law rule requiring exhaustion of administrative remedies accomplishes two important policy objectives: 1) exhaustion protects the authority of the administrative agency by giving it an 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures,' and 2) 'exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.' " *Id*. (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

In his brief, Respondent outlined the 3 steps for which Harris was required to comply in order to fully exhaust his administrative remedies as follows:

> The Bureau of Prisons (BOP) has promulgated an administrative remedy system which is embodied in 28 C.F.R. § 542.10 *et seq*. and BOP Program Statement 1330.17, Administrative Remedy Program... The administrative remedy procedures afford federal inmates the opportunity to redress grievances and the BOP an opportunity to resolve issues. *See* 28 C.F.R. § 542.10 *et seq*. The inmate is required to file a formal complaint with the warden within twenty days of the date on which the basis of the complaint occurred (BP-9). *Id*. § 542.14. The warden then has twenty days in which to respond. *Id*. § 542.18. If dissatisfied with the warden's response, the inmate may appeal the warden's decision to the BOP Regional Office (BP-10). *Id*. § 542.15. The Regional Office has thirty days to respond. *Id*. § 542.18. If still dissatisfied, the inmate may appeal to the Central Office (BP-11). *Id*. The Central Office has fifty days to respond. *Id*. No

>administrative remedy appeal is considered to have been finally exhausted until considered by the BOP Central Office. *Id*. at § 542.15(a).

Doc. 8 at 4-5. The Court agrees that a petitioner seeking habeas relief under 28 U.S.C. § 2241 must first complete all 3 steps of the administrative remedy process (BP-9 through BP-11) prior to filing his petition, unless certain extenuating circumstances warranting an exception to the common law rule are applicable. To hold otherwise would undermine the BOP's ability to resolve issues at the institutional level before federal litigation becomes necessary. It would effectively allow inmates to bypass the administrative remedy process by disregarding it, thereby defeating the policy objectives of requiring exhaustion of administrative remedies in the first place.

Harris urges the Court to apply the futility exception to the common law rule requiring exhaustion of administrative remedies. Under the futility exception, the exhaustion requirement may be excused if "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)). In support of her request to adopt this exception, Harris attaches a memorandum issued by Greenville-FCI staff at the institutional level that provides as follows:

>It has come to my attention that inmates are sending numerous cop outs requesting they be considered for additional RRC placement under the Second Chance Act. Be advised, all inmates are automatically reviewed for the Second Chance Act. If you send a cop out requesting RRC placement under the Second Chance Act it will not be answered. If you have already submitted a cop out concerning this matter, this memorandum serves as your response. You will be notified of the Unit Team's decision of additional RRC placement under the Second Chance Act when you sign your RRC referral paperwork.

4

Doc. 15 at 15. Harris also stated that exhaustion would be futile because Greenville-FCI officials "have taken a strong position on the matter." *See id*. at 6. This evidence is not persuasive to suggest that pursuing administrative remedies would be futile. While this evidence would suggest that Greenville-FCI has predetermined how it will handle requests for additional RRC placement, there are still two more levels of BOP administrative review available (BP10-11).

In addition, Harris attached a memorandum issued at the Central Office level entitled "Pre-Release Residential Re-Rentry Center Placements Following the Second Chance Act of 2007" and has also submitted revised guidance regarding the same. *See id*. at 10-14. Without any explanation, Harris asserts that the BOP has implemented a policy which violates the Second Chance Act. *See id*. at 5. The Court has reviewed the submitted evidence, and it does not appear that this documentation violates any provision of the Second Chance Act. Rather, the documentation merely provides guidance to institutions on implementation of the provisions of the Second Chance Act. *See id*. at 10-14. This evidence does not support Harris' claim that exhaustion of administrative remedies would be futile. Rather, many of the provisions contained in the guidance should entice prisoners to utilize to exhaust all levels of administrative appeal. For example, Regional Director approval is required for pre-release placement beyond 6 months. *See id*. at 11, 13. Reading this document should have encouraged, rather than discouraged, Harris from filing a BP-10 appeal to the Regional Office level.

Finally, Harris argues that BOP officials only begin their RRC placement review 17-19 months prior to the release date so there would not have been enough time to exhaust her remedies through all the various levels of administrative review. Based on the BOP regulations summarized above, exhaustion through the various stages of review would take a minimum of

120 days.[1]  It is recognized that completely all levels of review might actually take some additional time due to sending the appeals through the mail and other similar delay issues.  It appears that Harris was in possession of the memorandum serving as an automatic denial of additional RRC placement on or near January 3, 2013. *See* Doc. 6-1 at 1.  If she would have submitted her BP-10 appeal at that time, she may have been able to receive a response from the Central Office in this same month of May.  That would have been before her RRC eligibility date of June 17, 2013.  And as discussed below, Harris would have actually been better served by utilizing the BOP administrative process than filing a petition for a writ of habeas corpus in this Court.

In sum, Harris has not met her burden in demonstrating that the futility exception to the exhaustion requirement is appropriate here.  The "hurdle is high" to excuse exhaustion in a § 2241 habeas proceeding. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004).  Even if Harris were able to clear the barrier, the Court likely could not consider the merits of her petition.  The plain language of the Second Chance Act places the length on placement within the discretion of the BOP. *See* 18 U.S.C. § 3624(c); *see also, e.g., Rieser v. Sherrod,* No. 10-541, 3 (S.D.Ill., Jan 5, 2011) (The statute also makes placement in a community correctional facility permissive, not mandatory.  Petitioner has no absolute right to placement in "conditions that will facilitate his reentry into society" for longer than the 6 months determined by the Director of the Bureau of Prisons.).  That being the case, this Court has agreed with several Circuit Courts of Appeals in that the Second Chance Act "does not create a protected liberty interest, and thus does not guarantee placement into community confinement for any federal prisoner." *Pollard v. Sherrod*, 10-CV-143-DRH, 2010 WL 3184366 (S.D. Ill. Aug. 10, 2010) (citing *Prows v. Federal*

---

[1] In contrast, this case has been pending for 162 days even though it has received expedited review due to Harris' approaching release date.

*Bureau of Prisons*, 981 F.2d 466 (10th Cir. 1992), *cert. denied*, 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir. 1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society.")). If there is nothing mandating RRC placement of any length, than there can be no statutory or liberty interest that could compel judicial review of BOP's use of its discretion regarding RRC placement of 12 months or less under the Second Chance Act.

### RECOMMENDATION

The materials submitted demonstrate that Harris is not being held in custody in violation of the Constitution or federal law. She is not entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2241. It is recommended that the petition (Doc. 6) be denied and this habeas litigation be dismissed.

SO RECOMMENDED.

DATED: May 8, 2013.

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE